**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| REPUBLIC OF AZERBAIJAN,<br>*Plaintiff*,<br>v.<br>CABLE NEWS NETWORK, INC.,<br>*Defendant*. | Case No. 26-cv-1043-CFC |

**DEFENDANT CABLE NEWS NETWORK, INC.'S**
**OPENING BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS THE COMPLAINT**

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger (*pro hac vice*)
Alexandra Perloff-Giles (*pro hac vice*)
1251 Avenue of the Americas
42nd Floor
New York, NY 10020
(212) 489-8230

DAVIS WRIGHT TREMAINE LLP
Azeezat Adeleke (*pro hac vice*)
1301 K Street NW
Suite 500 East
Washington, D.C. 20005
(202) 973-3200

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Daniel M. Kirshenbaum (No. 6047)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dkirshenbaum@ycst.com

*Counsel for Defendant Cable News Network, Inc.*

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ..............................................1

SUMMARY OF ARGUMENT ..............................................................................1

STATEMENT OF FACTS ...................................................................................3

I. The Article..................................................................................................3

II. Communications between CNN and Azerbaijan ........................................4

III. The Complaint ............................................................................................5

ARGUMENT ......................................................................................................6

I. AZERBAIJAN'S DEFAMATION CLAIM FAILS ...................................7

A. A Government Cannot Be Defamed as a Matter of Law .........................7

B. The Statements Are Not Of and Concerning Azerbaijan .......................11

C. Azerbaijan Fails to Plausibly Allege Defamatory Meaning...................12

D. Azerbaijan Fails to Plausibly Allege Actual Malice ..............................14

II. THE PRIMA FACIE TORT DOCTRINE DOES NOT APPLY ..............21

CONCLUSION ..................................................................................................22

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Air Zimbabwe Corp. v. Trib. Publ'g Co.*,
Case No. BC 227735 (Cal. Super. Ct. Aug. 22, 2000) .......... 9

*Avins v. Dixon*,
774 F.2d 1150 (3d Cir. 1985) .......... 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7

*Biro v. Conde Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013),
*aff'd*, 807 F.3d 541 (2d Cir. 2015) .......... 15, 20

*Bose Corp. v. Consumers Union of U.S., Inc.*,
466 U.S. 485 (1984) .......... 19

*Brimelow v. New York Times Co.*,
2021 WL 4901969 (2d Cir. Oct. 21, 2021) .......... 18

*Buck v. Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006) .......... 1, 13

*Cabello-Rondon v. Dow Jones & Co., Inc.*,
2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017),
*aff'd*, 720 F. App'x 87 (2d Cir. 2018) .......... 19

*Cayuga Nation v. Showtime Networks Inc.*,
191 A.D.3d 573 (N.Y. App. Div. 2021) .......... 9

*Church of Scientology Int'l v. Daniels*,
992 F.2d 1329 (4th Cir. 1993) .......... 17

*City of Chicago v. Tribune Co.*,
307 Ill. 595 (1923) .......... 7

*City of Philadelphia v. Wash. Post Co.*,
482 F. Supp. 897 (E.D. Pa. 1979) .......... 8

*Colbert v. Goodville Mut. Cas. Co.*,
2010 WL 2636860 (Del. Super. Ct. June 30, 2010) ....................21

*Coll. Sav. Bank v. Fla. Prepaid Educ. Expense Bd.*,
919 F. Supp. 756 (D.N.J. 1996) ....................9

*Contemp. Mission, Inc. v. New York Times Co.*,
842 F.2d 612 (2d Cir. 1988) ....................17

*Copeland v. Netflix, Inc.*,
2025 WL 775500 (D. Del. Mar. 11, 2025) ....................15, 20

*Doe v. Cahill*,
884 A.2d 451 (Del. 2005) ....................11, 12

*Edgartown Police Patrolmen Ass'n v. Johnson*,
522 F. Supp. 1149 (D. Mass. 1981) ....................9

*Epps v. Fox News Network, LLC*,
2026 WL 1266101 (D. Del. May 8, 2026) ....................18, 19

*Farah v. Esquire Mag.*,
736 F.3d 528 (D.C. Cir. 2014) ....................7

*Gibney v. Fitzgibbon*,
547 F. App'x 111 (3d Cir. 2013) ....................11

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989) ....................18

*Images Hair Sols. Med. Ctr. v. Fox News Network, LLC*,
2013 WL 6917138 (Del. Super. Ct. Dec. 20, 2013) ....................13

*Isaac v. Politico LLC*,
346 A.3d 103 (Del. 2025) ....................11

*Leisten v. CBS Broad. Inc.*,
2023 WL 6890733 (3d Cir. Oct. 19, 2023) ....................6

*Lemelson v. Bloomberg L.P.*,
903 F.3d 19 (1st Cir. 2018) ....................16, 18

*Lohrenz v. Donnelly*,
350 F.3d 1272 (D.C. Cir. 2003)....................18

*Louisiana v. Time, Inc.*,
249 So. 2d 328 (La. Ct. App. 1971)....................8

*Matthaus v. Hadjedj*,
148 A.D.3d 425 (N.Y. App. Div. 2017)....................21

*McCafferty v. Newsweek Media Grp., Ltd.*,
955 F.3d 352 (3d Cir. 2020)....................14, 20

*McKenzie v. Dow Jones & Co.*,
355 F. App'x 533 (2d Cir. 2009)....................22

*Michel v. NYP Holdings, Inc.*,
816 F.3d 686 (11th Cir. 2016)....................15, 18

*Moore v. Cecil*,
109 F.4th 1352 (11th Cir. 2024)....................17

*New York Times v. Sullivan*,
376 U.S. 254 (1964)....................1, 7, 8, 14

*Nix v. Sawyer*,
466 A.2d 407 (Del. Super. Ct. 1983)....................21, 22

*OAO Alfa Bank v. Ctr. for Pub. Integrity*,
387 F. Supp. 2d 20 (D.D.C. 2005)....................17

*Pace v. Baker-White*,
850 F. App'x 827 (3d Cir. 2021)....................14, 20

*Page v. Oath Inc.*,
270 A.3d 833 (Del. 2022)....................14

*Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*,
442 F. App'x 681 (3d Cir. 2011)....................9

*Read v. Carpenter*,
1995 WL 945544 (Del. Super. Ct. June 8, 1995),
*aff'd*, 670 A.2d 1340 (Del. 1995)....................13

*Rhode Island Off. of Gen. Treasurer v. Paramount Glob.*,
331 A.3d 179 (Del. Ch. 2025),
*aff'd and remanded*, 361 A.3d 900 (Del. 2026) ....................16

*Riley v. Moyed*,
529 A.2d 248 (Del. 1987) ....................12, 13

*Rosenblatt v. Baer*,
383 U.S. 75 (1966) ....................8

*Sharon v. Time, Inc.*,
599 F. Supp. 538 (S.D.N.Y. 1984) ....................10

*Southampton Fire Dist. v. Vill. of Southampton*,
2008 WL 1766381 (N.Y. Sup. Ct. Mar. 25, 2008) ....................9

*Tah v. Global Witness Publ'g, Inc.*,
991 F.3d 231 (D.C. Cir. 2021) ....................10

*Tavoulareas v. Piro*,
817 F.2d 762 (D.C. Cir. 1987) ....................20

*Trump v. Dow Jones & Co., Inc.*,
833 F. Supp. 3d 1359 (S.D. Fla. 2026) ....................18

*Tucker v. Fischbein*,
237 F.3d 275 (3d Cir. 2001) ....................14

*UnitedHealth Grp. Inc. v. Guardian News & Media LLC*,
2026 WL 2099746 (Del. July 20, 2026) ....................12

*White v. Irwin*,
114 F. Supp. 3d 174 (D. Del. 2015) ....................12

*Williams v. Atl. L. Grp., LLC*,
174 F. Supp. 3d 874 (D. Del. 2016) ....................21

**Other Authorities**

Right of Governmental Entity to Maintain Action for Defamation,
45 A.L.R. 3d 1315 ....................8

Fed. R. Evid. 201(b)(2) ....................13

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 6

## NATURE AND STAGE OF THE PROCEEDINGS

On August 17, 2026, the Republic of Azerbaijan ("Azerbaijan") filed this lawsuit against Defendant Cable News Network ("CNN"), asserting claims for defamation and prima facie tort based on a June 5, 2026 article reporting that Israel used Azerbaijan as a launch point for clandestine operations against Iran.[1] The complaint stands for the absurd proposition that Americans are protected by the First Amendment only when they report on their own government, not about the governments in the other 190+ countries in the world. At least, that is what Azerbaijan, a dictatorship that has curtailed the free press within its own borders, asks this Court to hold. It takes no leap of imagination to see how Azerbaijan's requested outcome would be exploited by rogue regimes around the world to silence reporting within the United States with the threat of litigation.

CNN now moves for dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF ARGUMENT

1. Every American court that has addressed the question has held that governments, as a matter of law, cannot sue for defamation to punish reporting like CNN's. *See New York Times v. Sullivan*, 376 U.S. 254, 291 (1964). Azerbaijan

---

[1] Declaration of Katherine M. Bolger ("Bolger Decl."), Ex. 1 ("Article") at 3. The Article is "incorporated by reference or integral to the" Complaint. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

attempts an end-run around this well-established rule by arguing that it does not apply to *foreign* sovereigns. It cites no law for that assertion—because there is none. The First Amendment's protections for free speech and a free press apply with full force to this lawsuit. Permitting Azerbaijan's claims to proceed not only runs afoul of those protections but invites repressive foreign governments to export their speech-restrictive regimes and censor American news outlets.

2. Even if Azerbaijan *could* sue CNN for defamation, its claim would still fail. First, the statements at issue are not about actions by Azerbaijan. Second, Azerbaijan has not pled that any statement would cause a reasonable CNN reader to think less of the country. Third, the Complaint does not plausibly allege that CNN subjectively doubted its reporting. To the contrary, the facts in the Complaint and documents incorporated by reference, including the extensive prior reporting on Azerbaijan's ties with Israel and the inclusion of Azerbaijan's denial in the article itself, *disprove* actual malice.

3. Finally, Azerbaijan's half-hearted claim for a prima facie tort under Delaware law fails because it is duplicative of the defamation claim and inadequately pled.

## STATEMENT OF FACTS

### I. The Article

The gravamen of Azerbaijan's Complaint is that "CNN falsely claimed that Azerbaijan had allowed Israel to use its territory to launch attacks against Iran." Compl. ¶ 7. This claim is based on a June 5, 2026 article by CNN Senior Reporter Tal Shalev and contributor Tim Lister titled *Exclusive: Israel sent troops to Azerbaijan during Iran war as part of secret network across region, sources say* (the "Article"). Article at 1.

The Article does not contain the language complained of above. It reported that Israel "secretly deployed" military and intelligence units to Azerbaijan to facilitate operations against Iran, and that, even before the war began, Israel launched a "covert mission" to install intelligence equipment along the Azerbaijan-Iran border to aid its Iranian surveillance. *Id.* at 2, 5-6.

The Article further reported that on March 4—days into the war that began on February 28—Israel used Azerbaijan's territory to launch a strike that killed Rahman Moghaddam, a leader of the Islamic Revolutionary Guard Corps (IRGC). *Id.* at 7. On March 5, Iran apparently retaliated with a drone attack on Azerbaijan. *Id.*; Compl. ¶ 38. On March 6, Azerbaijan's State Security Service announced it had stopped an IRGC plot to attack Azerbaijani infrastructure as part of a joint mission with the Israeli military. Article at 7.

The Article explained that Israel views Azerbaijan "as a strategic partner in its fight against Iran," and the countries maintain "close ties around commercial and military interests." *Id.* at 5, 7. The Article also reported that Israel has deployed military and intelligence units to covert sites in *other* countries across the region, including Iraq, the United Arab Emirates, and Somaliland. *Id.* at 2-3.

## II. Communications between CNN and Azerbaijan

Prior to publication, Shalev and Lister contacted the Azerbaijani government for comment. Compl. ¶¶ 15, 67. The Article quotes a spokesperson for Azerbaijan saying: "We firmly reject unfounded claims regarding the alleged use of Azerbaijan's territory for operations against third countries." Article at 3. Shortly after publication, the Article was updated to include a further denial from the Azerbaijan Media Development Agency: "The publication of this information is aimed at creating confusion with the international community, undermining regional stability and interstate relations, and generating tensions in the region … Such fabricated claims constitute blatant information manipulation." *Id.*

The next day, the Azerbaijani Ambassador to the United States contacted CNN to again demand a retraction. Compl. ¶¶ 16, 50. Further retraction demands

allegedly followed on June 23 and July 2. *Id.* ¶¶ 51-56; Bolger Decl. Ex. 2 ("July 2 Demand Letter").[2]

On July 9, CNN responded that it would not alter or retract the Article. Compl. ¶ 56; Bolger Decl. Ex. 3 ("July 9 Response Letter"). It explained that a spokesperson's denial "does not require a news organization to suppress reporting supported by multiple sources with direct knowledge of the events," that Azerbaijan's asserted harm was "difficult to reconcile with the extensive public record concerning Azerbaijan's longstanding political, economic, military and strategic relationship with Israel," and that "[t]he idea that a government could sue the press for coverage it does not like is anathema to our constitutional order." Ex. 3 at 1-2.

## III. The Complaint

Nevertheless, on August 17, Azerbaijan filed suit, asserting claims for defamation and prima facie tort under Delaware law. The Complaint challenges three sets of statements in the Article as false and defamatory of Azerbaijan: (1) that "Israel secretly deployed elite military and intelligence units," which operated from "several locations in southern Azerbaijan," "adjacent to Iran's northern border," and which carried out "intelligence-gathering and drone operations," Compl. ¶¶ 42-44;

---

[2] The correspondence is incorporated by reference into the Complaint. *See* Compl. ¶¶ 55-56.

(2) that Israel installed intelligence equipment along the Azerbaijan-Iran border, *id.* ¶ 45; and (3) that Israel launched its operation to target Moghaddam from a base in Azerbaijan, *id.* ¶ 46 (collectively, the "Challenged Statements"). Azerbaijan alleges that it "maintains a strict official policy and legislative framework against foreign military footprints," *id.* ¶ 5—notwithstanding "the deepening partnership between Azerbaijan and the State of Israel." *Id.* ¶ 35. While Azerbaijan alleges the Article threatened to inflame geopolitical tensions and "draw [it] into a regional war," *id.* ¶ 13, the Complaint does not challenge the Article's reporting of Azerbaijan's other connections to Israel.

## ARGUMENT

This dangerous defamation lawsuit should be dismissed because the Constitution prohibits governments—foreign or domestic—from bringing defamation claims. Any other rule would allow countries like Azerbaijan, a dictatorship rated "not free" by Freedom House, to burden the free-speech rights of Americans on matters of public interest, in direct contravention of the protections of the First Amendment. In any event, Azerbaijan has not even pled the basic elements of a defamation claim.

To survive a motion to dismiss under Rule 12(b)(6), the Complaint "must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'" *Leisten v. CBS Broad. Inc.*, 2023 WL 6890733, at *2 (3d Cir.

Oct. 19, 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's failure to "raise a claim of entitlement to relief … should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (cleaned up). That is particularly true in defamation cases "because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails." *Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2014).

## I. AZERBAIJAN'S DEFAMATION CLAIM FAILS

### A. A Government Cannot Be Defamed as a Matter of Law

First, this Court must dismiss this case because a government may not sue for defamation as a matter of constitutional law. Over a century ago, in *City of Chicago v. Tribune Co.*, 307 Ill. 595 (1923) (cited in Compl. ¶ 27), the Supreme Court of Illinois answered the question of whether a government can maintain an action for libel with a resounding "no." It explained that governments can more easily "stif[le] opposition by a series of civil actions than by criminal actions," and that freedom from such repression "was one of many reasons why the American colonists revolted." *Id.* at 600, 607. Decades later, in *New York Times v. Sullivan*, 376 U.S. 254, a unanimous Supreme Court embraced that rule. Quoting *City of Chicago*, it observed that "no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of

jurisprudence." *Id.* at 291 (quoting *City of Chicago*, 307 Ill. at 601). This prohibition, the Court explained, ensures "that a good-faith critic of government will [not] be penalized for his criticism." *Id.* at 292.

Two years later, in *Rosenblatt v. Baer*, the Supreme Court affirmed this rule, reversing a defamation award in favor of a local official among "the group responsible for the conduct of [the] governmental operation." 383 U.S. 75, 80, 83 (1966). It held that "an otherwise impersonal attack on government operations" does not support an actionable libel claim, as "the Constitution does not tolerate in any form" "the spectre of prosecutions for libel on government." *Id.* at 80-81. Since then, contrary to Plaintiff's effort to paint the issue here as "novel," Compl. ¶ 26, courts have "unanimously concluded that a government entity, by reason of its nature as a government entity, cannot maintain an action for defamation…." Right of Governmental Entity to Maintain Action for Defamation, 45 A.L.R. 3d 1315 (citing cases).

Azerbaijan concedes, as it must, that this prohibition applies to government entities within the United States. *See* Compl. ¶ 27 ("[A] domestic governmental entity cannot maintain a defamation action."). An unbroken line of authority conclusively establishes this rule. *See, e.g.*, *Louisiana v. Time, Inc.*, 249 So. 2d 328, 329 (La. Ct. App. 1971) (state barred from suing in defamation); *City of Philadelphia v. Wash. Post Co.*, 482 F. Supp. 897, 898-99 (E.D. Pa. 1979) ("The City cannot

maintain an action for libel on its own behalf. A governmental entity is incapable of being libeled."); *Edgartown Police Patrolmen Ass'n v. Johnson*, 522 F. Supp. 1149, 1152 (D. Mass. 1981) ("It is well-established that a governmental body may not sue for libel."); *Coll. Sav. Bank v. Fla. Prepaid Educ. Expense Bd.*, 919 F. Supp. 756, 766 (D.N.J. 1996) (state agency cannot maintain an action for libel); *Southampton Fire Dist. v. Vill. of Southampton*, 2008 WL 1766381, at *3 (N.Y. Sup. Ct. Mar. 25, 2008) ("[A] governmental entity … is incapable of being libeled.").

Instead, Azerbaijan claims the law is unsettled as to whether there is prohibition on libel suits by foreign governments. Compl. ¶ 27. Azerbaijan is wrong. The law is clear that if a plaintiff "constitutes *any* kind of governmental entity, then it cannot sue for libel." *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 690 (3d Cir. 2011) (citing *Sullivan*, 376 U.S. at 254) (emphasis added).[3] For example, courts have dismissed libel claims brought by a sovereign Indian tribal government, *see Cayuga Nation v. Showtime Networks Inc.*, 191 A.D.3d 573, 573-74 (N.Y. App. Div. 2021) (Cayuga Nation's "claims were correctly dismissed on the ground that a governmental entity cannot maintain a libel claim"), and by an entity owned by a foreign government, *see Air Zimbabwe Corp. v. Trib. Publ'g Co.*, Case No. BC 227735 (Cal. Super. Ct. Aug. 22, 2000) (dismissing

---

[3] Insofar as the case law involving defamation claims by foreign governments is limited, that is because other governments have not wasted their time trying to do what the law clearly forbids.

defamation claim by airline owned by Zimbabwe on the grounds that it was a government entity precluded from pursuing defamation claim).

Notably, in *Sharon v. Time, Inc.*, the court expressly distinguished between "a *government's* effort to punish speech" and "an *official's*" claim for defamation, suggesting that the former would not be permissible while the latter was. 599 F. Supp. 538, 555 (S.D.N.Y. 1984) (emphases added). Only because the challenged statement "name[d] [former Israeli Defense Minister Ariel Sharon] personally, without attributing his alleged discussion about revenge to his government," could the claim proceed. *Id.* Here, the reporting is about a government, not an individual, and Azerbaijan cannot assert its claim.

Perhaps recognizing it has no law on its side, Azerbaijan tries policy: It argues that "the American public's right to criticize its own government" does not extend to foreign sovereigns "not accountable to the American electorate." Compl. ¶ 27. That turns the First Amendment on its head. The First Amendment protects American speakers and publishers, whether they are reporting on domestic or foreign affairs. *See, e.g.*, *Tah v. Global Witness Publ'g, Inc.*, 991 F.3d 231, 240-42 (D.C. Cir. 2021) (applying First Amendment principles to affirm dismissal of defamation claims against U.S. publisher by Liberian government officials). The American media must be able to keep the American public informed about events around the world. And it is perhaps especially important that American news outlets be able to

report on governments like Azerbaijan that are *not* democratically accountable and control their local media landscape. Under Azerbaijan's theory, the most repressive nations could saddle the American press with meritless libel claims to try to shield themselves from scrutiny. China could sue over mentions of Tiananmen Square, Russia over death tolls from its invasion of Ukraine, and Iran over discussion of anti-regime protests. However sovereign nations may restrict the free flow of information within their own borders, the First Amendment does not allow American courts to impose such restrictions on American publishers. Azerbaijan cannot maintain this lawsuit in the United States.

### B. The Statements Are Not Of and Concerning Azerbaijan

Even if Azerbaijan could overcome this constitutional impediment, Azerbaijan has failed to identify any plausibly defamatory statement that "concerns" it. *Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005). To state a claim for defamation, "a plaintiff must plead … that the defendant made a statement *about the plaintiff* that would be understood as defamatory by a reasonable third party." *Isaac v. Politico LLC*, 346 A.3d 103, 117 (Del. 2025) (quoting *Cousins v. Goodier*, 283 A.3d 1140, 1148 (Del. 2022)) (emphasis added). Where the challenged statement is not defamatory as to the plaintiff, dismissal is proper. *See, e.g.*, *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113-14 (3d Cir. 2013).

Here, the Challenged Statements are not about Azerbaijan—they are about Israel. *Israel* carried out secret operations against Iran; *Israel* deployed its forces and equipment on Iran's borders; and *Israel* launched the operation that killed Moghaddam. A reasonable reader would not interpret these statements as attributing any action to *Azerbaijan*, much less wrongdoing. The Challenged Statements say nothing about Azerbaijan's actions and are not of and concerning it.

### C. Azerbaijan Fails to Plausibly Allege Defamatory Meaning

Next, Azerbaijan's claim fails because it has not plausibly alleged that any statement in the Article was defamatory. "Whether or not a statement is defamatory is a question of law." *Cahill*, 884 A.2d at 463. A defamatory statement "lower[s] [the plaintiff] in the estimation of the community or deter[s] third persons from associating or dealing with him." *Riley v. Moyed*, 529 A.2d 248, 253 (Del. 1987). The failure to plead defamatory meaning compels dismissal. *See, e.g.*, *White v. Irwin*, 114 F. Supp. 3d 174, 186 (D. Del. 2015); *UnitedHealth Grp. Inc. v. Guardian News & Media LLC*, 2026 WL 2099746, at *7 (Del. July 20, 2026).

None of the Challenged Statements about Israel conducting operations from Azerbaijan are defamatory. *First*, even if the Challenged Statements implied something more than Israel's exploitation of a passive Azerbaijan, statements about cooperation between Israel and Azerbaijan are not defamatory. A statement is not defamatory where "even if false, [it] is not capable of injuring Plaintiffs'

reputation[.]" *Images Hair Sols. Med. Ctr. v. Fox News Network, LLC*, 2013 WL 6917138, at *4 (Del. Super. Ct. Dec. 20, 2013). The Article discusses geopolitical relationships; it would not "lower" Azerbaijan in the estimation of CNN readers. *Riley*, 529 A.2d at 253. Nor would any alleged involvement by Azerbaijan in the killing of the former IRGC intelligence leader harm its reputation, given that the IRGC has been designated as a foreign terrorist organization by the United States since 2019.[4]

*Second*, where the plaintiff "has placed the allegedly defamatory statements in a non-defamatory context[]" through its own admissions, such that the challenged statements "essentially restate actions which plaintiff attributes to [it]self[,]" "the allegedly defamatory statements are not defamatory at all." *Read v. Carpenter*, 1995 WL 945544, at *4 (Del. Super. Ct. June 8, 1995), *aff'd*, 670 A.2d 1340 (Del. 1995). Here, the Challenged Statements essentially restate actions Azerbaijan attributes to itself. According to the Complaint and the articles incorporated by reference, *see Buck*, 452 F.3d at 260, Azerbaijan and Israel have a "mutually beneficial commercial relationship" and "deepening partnership." Compl. ¶¶ 34-35. Its "President … maintains excellent relations with … Israel," and the countries have "built a strategic partnership."[5] They have "long-standing ties … in security, energy, and

[4] Bolger Decl. Ex. 4 at 2. This fact is subject to judicial notice. *See* Fed. R. Evid. 201(b)(2).

[5] Bolger Decl. Ex. 5 at 1 (cited in Compl. at 6 n.5).

diplomacy[,]"[6] and their "symbiotic relationship extends beyond energy cooperation to military-industrial collaboration[]" to tackle the "shared threat from Iran."[7] In short, Azerbaijan *pleads* it has a longstanding, positive relationship with Israel. An article describing that relationship is, therefore, not defamatory.

**D. Azerbaijan Fails to Plausibly Allege Actual Malice**

Finally, Azerbaijan's defamation claim also fails because it has not plausibly alleged actual malice, as it must. Compl. ¶ 67; *see McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020); *Page v. Oath Inc.*, 270 A.3d 833, 849 (Del. 2022). "'Actual malice' is a term of art that does not connote ill will or improper motivation." *McCafferty*, 955 F.3d at 359. Instead, it "requires that the publisher either know that its article was false or publish it with 'reckless disregard' for its truth." *Id.* (citation omitted); *see Sullivan*, 376 U.S. at 280. "A defendant acts with reckless disregard if it 'in fact entertained serious doubts as to the truth of his publication.'" *Pace v. Baker-White*, 850 F. App'x 827, 831 (3d Cir. 2021) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). The actual malice inquiry thus requires "a subjective belief that the statement was false [or probably false] when made." *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001). Actual malice is a "high bar," reflecting the principle that "[t]he First Amendment demands 'adequate

---

[6] Bolger Decl. Ex. 6 at 1 (cited in Compl. at 6 n.4).
[7] Bolger Decl. Ex. 7 (cited in Compl. at 6 n.5).

breathing space' for the free flow of ideas, especially about public figures on matters of public controversy." *Copeland v. Netflix, Inc.*, 2025 WL 775500, at *7 (D. Del. Mar. 11, 2025) (quoting *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988)).

The Article is deeply sourced. *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 704 (11th Cir. 2016) (no actual malice where "the reporters spoke with, consulted, or otherwise reached out to" a host of sources). The first paragraph attributes Israel's deployment of military and intelligence units to Azerbaijan to "four sources familiar with the matter." Article at 2. The Article goes on to attribute particular statements to certain of those sources, for example, explaining that "two of the sources familiar with the plans told CNN[]" that "Israel prepared a covert mission along the Azerbaijan-Iran border" in "mid-January." *Id.* at 5. Such due diligence negates actual malice.

To avoid this, Azerbaijan argues that CNN's use of confidential sources "establish[es] that those responsible for publishing the [Article] did so with knowledge of, or reckless disregard for, its falsity." Compl. ¶ 67. That is wrong. The use of confidential sources has no bearing on whether a journalist "had 'serious doubts about'" the source's information. *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 286 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015); *see also, e.g.*, *Michel*, 816 F.3d at 704 ("That many of the sources were not identified by name does not render them or the reliance on them invalid."). Indeed, "Delaware recognizes anonymous

sources as a foundational aspect of the freedom of the press and the protections afforded under the First Amendment," permitting "[j]ournalists [to] obtain critical information," *Rhode Island Off. of Gen. Treasurer v. Paramount Glob.*, 331 A.3d 179, 199 (Del. Ch. 2025), *aff'd and remanded*, 361 A.3d 900 (Del. 2026)—particularly in circumstances such as this involving military or intelligence matters that sources are not permitted to discuss.[8]

More than that, Azerbaijan's own allegations about its publicly known relationship with Israel make it impossible for it to allege actual malice. *See, e.g.*, *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018) (no actual malice where Plaintiff's admitted conduct "provided ample background against which the reports from unnamed sources … hardly seemed surprising"). The articles cited in the Complaint discuss the "growing cooperation" "between Azerbaijan and Israel," including on "counterterrorism."[9] They explain that "Baku remained a close … arms and intelligence partner of Israel," "plac[ing] it on the side Iran was fighting."[10]

Indeed, as CNN reminded Azerbaijan in its July 9 Response Letter, news outlets have reported on Israel's connection to Azerbaijan for more than a decade. As far back as 2012, *Foreign Policy* reported that "[t]he Israelis have bought an

[8] It is false that the Article "rested entirely" on anonymous sources, Compl. ¶ 67: it quotes, for example, Gershon Kogan and Joshua Kucera. Article at 7.
[9] Bolger Decl. Ex. 6 at 1.
[10] Bolger Decl. Ex. 8 at 1 (cited in Compl. at 6 n.6).

airfield … and the airfield is called Azerbaijan."[11] And Reuters reported that Azerbaijan had "explored with Israel how Azeri air bases and spy drones might help Israeli jets pull off a long-range attack."[12] This reporting from a variety of credible news sources negates any suggestion of actual malice. *See, e.g.*, *Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993) ("volume of published commentary" consistent with the statement defeated actual malice); *Moore v. Cecil*, 109 F.4th 1352, 1367 (11th Cir. 2024) (no actual malice where reported allegations had been "widely published in a multitude of sources"); *Contemp. Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 624 (2d Cir. 1988) (no malice where reporter "reviewed several articles," newspapers, and public statements discussing accusations); *OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 50, 52, 56 (D.D.C. 2005) (no actual malice where allegations that Russian bank had ties to organized crime matched similar allegations that had been "widely reported").

Azerbaijan's remaining allegations regarding actual malice fare no better. Compl. ¶ 67.

*First*, Azerbaijan's pre-publication denials do not establish that CNN knew its Article was false. It is well-settled that "the press need not accept denials, however

---

[11] Bolger Decl. Ex. 9 at 2. This article was discussed in the July 9 Response Letter incorporated by reference. *See supra* note 1.
[12] Bolger Decl. Ex. 10 at 2.

vehement," because "such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 691 n.37 (1989) (internal quotation marks omitted). Courts therefore routinely grant motions to dismiss where the plaintiff relies on a general denial to support its claim of actual malice. *See, e.g.*, *Epps v. Fox News Network, LLC*, 2026 WL 1266101, at *14 (D. Del. May 8, 2026) (failure to credit plaintiff's denials was not actual malice); *Lohrenz v. Donnelly*, 350 F.3d 1272, 1285 (D.C. Cir. 2003) (no actual malice where reporter was "warned" by officials that the conclusions she intended to report were "wrong"); *Brimelow v. New York Times Co.*, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021) ("It is well settled that denials without more do not support a plausible claim of actual malice.").

Moreover, CNN's *inclusion* of Azerbaijan's denial—and its update of the Article later that same day to include an additional denial from the Azerbaijan Media Development Agency—"undercut[s] any inference of actual malice." *Lemelson*, 903 F.3d at 24; *see also, e.g.*, *Michel*, 816 F.3d at 703 ("[W]here the publisher includes information contrary to the general conclusions reached in an article, that showing tends to undermine the claims of malice."); *Trump v. Dow Jones & Co., Inc.*, 833 F. Supp. 3d 1359, 1373 (S.D. Fla. 2026) (no actual malice where article included denial and "allow[ed] readers to decide for themselves what to conclude"

(quoting *Turner v. Wells*, 879 F.3d 1254, 1274 (11th Cir. 2018))); *Cabello-Rondon v. Dow Jones & Co., Inc.*, 2017 WL 3531551, at *10 (S.D.N.Y. Aug. 16, 2017) (where article includes plaintiff's denials, "the article cannot be said to evince an intent to deliberately avoid learning or portraying the truth"), *aff'd*, 720 F. App'x 87 (2d Cir. 2018). In short, CNN's publication of denials from two different Azerbaijani government agencies negates Azerbaijan's claim of actual malice.

*Second*, CNN's decision to stand by its reporting and not correct or retract any part of the Article also does not establish actual malice. "[T]he lack of a retraction has little to no relevance in the actual malice inquiry." *Epps*, 2026 WL 1266101, at *14 (quoting *Blankenship v. NBCUniversal, LLC*, 60 F.4th 744, 763 (4th Cir. 2023)). That is because actual malice is based solely on the defendant's state of mind "at the time of publication." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984). Post-publication denials and retraction demands therefore have no bearing on CNN's supposed actual malice.

*Third*, Azerbaijan's allegations of prior false reporting are both wrong and irrelevant. It argues that Lister has "a history of biased, false reporting about Azerbaijan," citing articles he published about Azerbaijan's 2020 conflict with Armenia that allegedly "fram[ed] Azerbaijan as the aggressor" and included "criticism" of the country. Compl. ¶¶ 60-62. But Azerbaijan identifies no specific

false statements in Lister's prior reporting, and CNN has no obligation to adopt Azerbaijan's preferred narrative. *See Biro*, 963 F. Supp. 2d at 276.

Even if Azerbaijan could plausibly allege that Lister published the Article based on some pre-existing general bias against the country (it cannot), that allegation would still be insufficient to plead actual malice. Allegations of "ill will" or an "improper motive" do not establish actual malice. *Pace*, 850 F. App'x at 832; *see*, *e.g.*, *McCafferty*, 955 F.3d at 360 (allegations regarding publisher's ulterior motives were irrelevant to actual malice); *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) ("It is settled that ill will toward the plaintiff or bad motives are not elements of actual malice."); *Copeland*, 2025 WL 3687742, at *7 ("[A] vendetta alone is no basis to infer knowledge that the [challenged] statements were false."). Lister's supposed "anti-Azerbaijan bias," Compl. ¶ 63, provides no basis for plausibly inferring that CNN had doubts about the truth of the Challenged Statements. But Azerbaijan's assertion reveals this lawsuit for what it is: an effort by a foreign dictatorship to suppress the constitutionally protected speech of the American press because it finds the reporting inconvenient. That is not the purpose of defamation law.

For each of these independent reasons, Azerbaijan's defamation claim fails.

## II. THE PRIMA FACIE TORT DOCTRINE DOES NOT APPLY

Azerbaijan's prima facie tort claim must also be dismissed as duplicative of the failed defamation claim and for failure to plead the elements of the claim. A prima facie tort claim requires "the intentional infliction of harm, absent excuse or justification, resulting in damage by an act or series of acts which would otherwise be lawful and which *do not fall within the categories of traditional tort*." *Nix v. Sawyer*, 466 A.2d 407, 412 (Del. Super. Ct. 1983) (emphasis added). A prima facie tort claim "is not a duplicative remedy for claims that can be sounded in other traditionally recognized tort theories, or a catchall remedy of last resort for claims that are not otherwise salvageable under traditional causes of action." *Colbert v. Goodville Mut. Cas. Co.*, 2010 WL 2636860, at *3 (Del. Super. Ct. June 30, 2010) (internal quotation marks omitted). Courts routinely dismiss prima facie tort claims predicated on the same allegations as a defamation claim. *See, e.g.*, *Avins v. Dixon*, 774 F.2d 1150 (3d Cir. 1985); *Matthaus v. Hadjedj*, 148 A.D.3d 425, 426 (N.Y. App. Div. 2017). Azerbaijan's attempt to use the prima facie tort doctrine to resurrect its failed defamation claim fails.

Further, Azerbaijan cannot plausibly allege, as it must, that CNN was "motivated solely by the desire to do injury." *Williams v. Atl. L. Grp., LLC*, 174 F. Supp. 3d 874, 878-79 (D. Del. 2016). Where, as here, the defendant's actions are "motivated," "at least in part," by an expressive purpose, "a cause of action for prima

facie tort will fail." *McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 536 (2d Cir. 2009). Here, there is no question CNN had an expressive purpose—to inform the public of world events. Azerbaijan also has not pled that CNN's Article "result[ed] in damage." *Nix*, 466 A.2d at 412. The prima facie tort claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: October 8, 2026

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger (*pro hac vice*)
Alexandra Perloff-Giles (*pro hac vice*)
1251 Avenue of the Americas
42nd Floor
New York, NY 10020
(212) 489-8230

DAVIS WRIGHT TREMAINE LLP
Azeezat Adeleke (*pro hac vice*)
1301 K Street NW
Suite 500 East
Washington, D.C. 20005
(202) 973-3200

*/s/ Daniel M. Kirshenbaum*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Daniel M. Kirshenbaum (No. 6047)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dkirshenbaum@ycst.com

*Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Opening Brief in Support of Defendant's Motion to Dismiss the Complaint complies with the type, font, and word requirements set forth in the Court's November 10, 2022 Standing Order regarding Briefing in All Cases. The text of the brief, including footnotes, was prepared in 14-point Times New Roman font and contains 4,990 words.

*_/s/ Daniel M. Kirshenbaum_*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Daniel M. Kirshenbaum (No. 6047)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
dkirshenbaum@ycst.com